IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 12-CR-00010-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JOHNIE A. MYERS,

    Defendant.

_____

**REPORTER'S TRANSCRIPT**
(Hearing on Change of Plea)

_____

    Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 2:10 p.m., on the 21st day of June, 2012, in Courtroom A901, United States Courthouse, Denver, Colorado.

**APPEARANCES**

    GUY TILL, Assistant U.S. Attorney, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the plaintiff.

    NORMANDO PACHECO, Attorney at Law, 2371 Locust, Denver, Colorado, 80207, appearing for the defendant.

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Paul Zuckerman, 901 19th Street, Room A259, Denver, Colorado, 80294, (303) 629-9285

PROCEEDINGS

1

2       (In open court at 2:10 p.m.)

3            THE COURT:  Please be seated.

4            The Court is convened today in Case No. 12-cr-10,

5   which is encaptioned for purposes of today's hearing as the

6   United States of America vs. Johnie A. Myers.  The matter is

7   set down for a change in plea.

8            Could I have entries of appearance, please.

9            MR. TILL:  Good afternoon, your Honor.  Your Honor,

10  I'm Guy Till.  I'm an Assistant United States Attorney,

11  representing the Government.  Also present at counsel table is

12  ATF Special Agent Jason Cole.

13           THE COURT:  Good afternoon and welcome.

14           MR. PACHECO:  Good afternoon, your Honor.  For the

15  record, my name is Normando Pacheco.  My state registration

16  number is 5296.  I appear on behalf of defendant, Mr. Myers,

17  who appears to my left.

18           And may I address the Court concerning his failure to

19  appear?

20           THE COURT:  You may.

21           MR. PACHECO:  Thank you, your Honor.

22           Judge, when I indicated to you yesterday that I had

23  texted him the night before and the morning of yesterday,

24  apparently that went to a land line that doesn't accept text

25  messages, so the fault is mine and mine alone in failing to

1    properly communicate with Mr. Myers about his court appearance

2    yesterday.  When I spoke with him approximately 45 minutes

3    after we recessed yesterday afternoon, indicated to Mr. Myers

4    what had transpired and that the Court wanted him here today --

5    and obviously he is here today.  And he is, as I indicated to

6    the Court -- he has always been more than prompt with me, and

7    he was here at least 25 minutes before our appearance at 2:00.

8    So the record should reflect that his failure to appear should

9    be the responsibility of myself as opposed to Mr. Myers.

10           THE COURT:  Thank you for making that statement,

11   Counsel.  Appreciate it.

12           Mr. Till, does the Government care to withdraw its

13   request for issuance of an arrest warrant?

14           MR. TILL:  Yes, your Honor.  We do request the Court

15   to allow us to withdraw our request for a bench warrant for

16   Mr. Myers.

17           THE COURT:  And I assume there is no objection.

18           MR. PACHECO:  For sure, your Honor.

19           THE COURT:  Thank you.

20           Then the request to withdraw the prior motion is

21   granted.

22           Glad to have you here, Mr. Myers.

23           Are you all ready to proceed?

24           MR. PACHECO:  The defense is, yes, ma'am.

25           MR. TILL:  Yes, your Honor, we are.

1          *THE COURT:*  Thank you.

2              Mr. Pacheco and Mr. Myers, would you and your client

3     please approach the lectern.

4              This matter is before the Court for a change in the

5     defendant's plea, for re-arraignment pursuant to Rule 10, and

6     for consideration of and advisement with regard to the parties'

7     plea agreement in accordance with Rule 11, both of the Federal

8     Rules of Criminal Procedure.

9              The record reflects that the defendant was charged

10    first in an indictment filed with this court on January 9,

11    2012, found at Docket No. 1, and then subsequently charged in a

12    superseding indictment found at Docket No. 180.  It was filed

13    with the Court on February 6, 2012.

14             My understanding is that he has -- he initially

15    entered a plea of not guilty to all of the charges that were

16    brought against him but that pursuant to the terms of a written

17    plea agreement he now desires to change his plea to a plea of

18    guilty to Count 32 in the superseding indictment and the

19    Government intends to dismiss counts in the superseding

20    indictment and in the original indictment as to the defendant;

21    is that correct?

22             *MR. TILL:*  Yes, your Honor, it is correct.

23             *THE COURT:*  Thank you.  Would you please re-arraign.

24             *MR. TILL:*  Sir, are you the same Johnie A. Myers who

25    is named in Count 32 of the superseding indictment at Docket

1   No. 180 in this case?

2         *THE DEFENDANT:*  Yes, I am.

3         *MR. TILL:*  Sir, in Count 32, the grand jury alleged

4   the offense of using and maintaining drug-involved premises and

5   aiding and abetting the same.  The allegation states that

6   between on or about February 5, 2007, and on or about

7   January 20, 2012, within the State and District of Colorado,

8   the defendant, Johnie A. Myers, knowingly maintained and used a

9   place, to wit: premises informally known as Hell's Lovers Motor

10   Cycle Club house -- Club clubhouse for the purpose of using and

11   distributing quantities of a substance and mixture containing a

12   detectable amount of marijuana, a Schedule I controlled

13   substance, and quantities of a substance containing a

14   detectable amount of cocaine, a Schedule II controlled

15   substance, and intentionally aided and abetted another to

16   maintain and use said premises for the purpose of using and

17   distributing Schedule I and Schedule II controlled substances,

18   all in violation of Title 21 United States Code Section

19   856(a)(1) and 2 and (b) and Title 18 United States Code Section

20   2, maintaining drug-involved premises and aiding and abetting

21   another to do so.

22         Sir, do you have any questions about that charge?

23         *THE DEFENDANT:*  No, I don't.

24         *MR. TILL:*  Do you understand it, sir?

25         *THE DEFENDANT:*  Yes, I do.

1      *MR. TILL:* Sir, today, how do you plead?  Do you plead

2   not guilty, or do you need guilty?

3          *THE DEFENDANT:* I plead guilty.

4          *MR. TILL:* Thank you, sir.

5          *MR. PACHECO:* Could I have just a second, Judge?

6          *THE COURT:* Sure.

7      (Discussion off the record between Mr. Pacheco and

8   defendant.)

9          *MR. PACHECO:* Thank you, your Honor.

10          *THE COURT:* Thank you.

11          As of this moment, Mr. Myers, you're not bound by your

12   plea of guilty.  Indeed, you're not bound by this plea until I

13   accept it.  You can change your mind at any time during this

14   hearing until I accept your plea.

15          In order to accept your plea, I have to be sure that

16   you understand the charges that have been brought against; you

17   understand your choices and the consequences that flow from

18   those choices.  I have to be sure that your decision to plead

19   guilty to Count 32 is voluntary and you haven't been pressured

20   into it.  I have to find that there is factual basis to support

21   your plea.  And in addition, I have to find that the waiver of

22   certain other rights that are contained in the plea agreement

23   are knowing and voluntary.

24          Throughout this hearing, I want you to let me know if

25   there is anything you don't understand or if you have any

1    questions.  If you'd like to confer with Mr. Pacheco at any

2    time, just let me know and we'll take a brief recess so you can

3    confer privately.

4         I begin by asking you a number of questions.  The

5    questions are not intended to trap, embarrass, insult, or

6    offend you.  The questions are important because your answers

7    are important.  It is your answers that I assess in order to

8    determine whether I can accept your plea or not.  Therefore,

9    you must answer my questions truthfully and completely.

10   Indeed, just like a witness, you take a solemn oath promising

11   to tell truth.  And if you don't, your answers can be used

12   against you if an action is brought against you for false

13   statement or perjury.  Do you understand?

14        *THE DEFENDANT:*  Yes, I do.

15        *THE COURT:*  Do you want to proceed?

16        *THE DEFENDANT:*  Yes, I do.

17        *THE COURT:*  Would you please administer the oath.

18        *THE COURTROOM DEPUTY:*  Please raise your right hand.

19     (Defendant sworn.)

20                              **EXAMINATION**

21   *BY THE COURT:*

22   *Q.*  Mr. Myers, how old are you?

23   *A.*  I'm 57.

24   *Q.*  What level of school did you complete?

25   *A.*  11th grade, then went to tech school.

1   Q.   Do you have any difficulty reading or writing?

2   A.   No.

3   Q.   Within the last 24 hours, have you taken any medication?

4   A.   No.

5   Q.   No medication?

6   A.   None.

7   Q.   Within the last 24 hours, have you used any drug or

8   alcohol?

9   A.   None.

10  Q.   To the best of your knowledge, have you been diagnosed with

11  any form of mental illness?

12  A.   No, I have not.

13  Q.   Is there anything about the way you feel today physically,

14  emotionally, or mentally that prevents you from understanding

15  what is happening?

16  A.   No.  I have no impairments.

17  Q.   You need to speak into the microphone, if you would,

18  please.

19  A.   No, your Magistrate, I don't have any impairments in my

20  judgment today.

21  Q.   All right.  Thank you.  Have you read and do you understand

22  the charges against you in the indictment and the superseding

23  indictment?

24  A.   Yes, I do.  I have read them thoroughly.

25  Q.   Have you discussed those charges with Mr. Pacheco?

1  A.  Yes, I have.

2  Q.  Have you asked him all the questions you had about them?

3  A.  Yes, I did.

4  Q.  Did he answer all your questions?

5  A.  Yes, he did.

6  Q.  Are there any other questions you want to ask him?

7  A.  I do not have any questions right now.

8          THE COURT:  Thank you.

9          Mr. Pacheco, could you identify the plea agreement for

10  the record, please.

11          MR. PACHECO:  The plea agreement is Court

12  Exhibit No. 1.  And the record should reflect that it bears the

13  signature of myself, Mr. Myers -- John stay here, please -- and

14  we went over this document on June 11 of this calendar year of

15  2012.

16          THE COURT:  Thank you.

17  BY THE COURT:

18  Q.  Mr. Myers, would you please turn to Exhibit 1.  Have you

19  read this document?

20  A.  Yes, I have.

21  Q.  Have you discussed it with Mr. Pacheco?

22  A.  Yes, I have.

23  Q.  Have you asked him all the questions you had about it?

24  A.  Yes, I did.

25  Q.  Has he answered all your questions?

1    *A.*  Yes, he answered all the questions that I had for him.

2    *Q.*  Now, there is a lot of legal language in this document.  Do

      you understand what it says and what it means?

4    *A.*  Yes, I do.  Most of it, I've actually looked up.

5    *Q.*  Okay.  Are there any parts that you don't understand?

6    *A.*  Not at this time.

7    *Q.*  Well, I need to know whether there are any parts you don't

8    understand.

9    *A.*  Oh, no, I do understand it.  I --

10   *Q.*  Okay.  Does it reflect all of your agreement with the

11   Government?

12   *A.*  Yes.

13   *Q.*  And, indeed, would you look at the last page and see if

14   your signature is on it.

15   *A.*  Yes, my signature is on it.

16   *Q.*  Thank you.

17        There is some language in this plea agreement found on

18   page 3 in paragraph E that affects other rights that you have

19   here.  This language deals with your right to appeal and your

20   right to collaterally attack the judgment that's entered in

21   this case.  You are giving up your right to appeal from any

22   sentence that is imposed in this case except under very limited

23   circumstances.  You can appeal only if the penalty exceeds the

24   maximum in the statutory penalty, exceeds the sentencing

25   guideline range, or the offense level used in computing the

1    guideline range exceeds 13.

2          You can collaterally attack the judgment or the

3    sentence by seeking -- by way of a petition for writ of *habeas*

4    *corpus* only under limited circumstances as well.  You can seek

5    that relief only if there is an explicitly retroactive change

6    in the applicable guidelines or sentencing statute, only if you

7    contend that you were denied constitutionally effective

8    assistance of counsel, or you contend that you were the victim

9    of prosecutorial misconduct.

10          Now, the last sentence of this provision says that if

11   the Government appeals the sentence imposed by the Court, then

12   you are released from the waiver provisions.

13          Do you understand these provisions?

14   *A.*  Yes, I do.

15          *THE COURT:*  Mr. Pacheco, it sounds like you reviewed

16   the plea agreement with your client.  Did you answer all of his

17   questions?

18          *MR. PACHECO:*  We did.

19          And I think the record should reflect we have gone

20   over two separate plea agreements through negotiations from the

21   first plea agreement to this one.  I have spent time with

22   Mr. Myers going over the guidelines as it was computed

23   originally, as to where we are now.

24          The record should reflect that I have also tendered to

25   him copies of the plea agreement, particularly Court

1    Exhibit No. 1 last week, asked Mr. Myers to please review it,

2    again if he had any questions to contact me.  He had no such

3    questions concerning the contents or the ramifications of the

4    plea itself.

5            THE COURT:  Are you satisfied that he understands the

6    contents of Exhibit 1?

7            MR. PACHECO:  Yes, ma'am.

8            THE COURT:  Did you review the discovery in this case?

9            MR. PACHECO:  Oh, yes, ma'am.

10           THE COURT:  And does it comport with the facts recited

11   in Exhibit 1?

12           MR. PACHECO:  Yes, it does, with the exception of one

13   thing.  And as the plea agreement sets forth, the Government

14   will be seeking an enhancement for a firearm.  It's our

15   position, which we made known to the Government sometime back,

16   that according to the informant there was, I guess -- Is that

17   term the Court wants to use?  Informant?

18           THE COURT:  Doesn't matter.

19           MR. PACHECO:  All right.  Anyhow, the individual that

20   was utilized by the Government in connection with this did

21   state at page 50 of the discovery that Mr. Myers in his

22   capacity as one of the officers of the organization

23   specifically told people not to have firearms on the premises.

24   We have discussed that with the Government.  That is the only

25   exception that is major to the Court because I think it will

 1 | affect the safety valve provision to which Mr. Myers may be

 2 | entitled.

 3 |      *THE COURT:*  That sounds like an issue that's going to

 4 | come up at sentencing.  Is there any disagreement that you have

 5 | with the facts recited in this document?

 6 |      *MR. PACHECO:*  No, ma'am.

 7 |      *THE COURT:*  Thank you.

 8 |      Mr. Till, does Exhibit 1 also bear your signature?

 9 |      *MR. TILL:*  Yes, your Honor, it does.

10 |      *THE COURT:*  Thank you.

11 | *BY THE COURT:*

12 | *Q.*  Mr. Myers, in Exhibit 1, there is a statement of what the

13 | Government believes it could prove if this matter were to go to

14 | trial.  By entering into the plea agreement, you are admitting

15 | that these facts are true.  I'll treat them as true both for

16 | purposes of considering your plea and also for purposes of

17 | sentencing.

18 |      Therefore, I'm going to ask Mr. Till to recite the

19 | facts you've agreed to.  Listen closely to what he says,

20 | because when he finishes, I'm going to ask you if those facts

21 | are true.  You must tell me if you have any disagreement with

22 | the facts recited by Mr. Till.

23 |      Do you understand?

24 | *A.*  Yes, I do.

25 |      *THE COURT:*  Thank you.

1        Mr. Till, would you recite the fact upon which the

2   parties agree.

3        *MR. TILL:*  Yes, your Honor.

4        The parties agree that Government's evidence at trial

5   would establish the following as to Count 32:  Between

6   January 1, 2010, and January 20, 2012, as witnessed in part by

7   an ATF undercover special agent and a number of confidential

8   human sources of information working with law enforcement, on

9   Friday and Saturday nights of the average week, the premises

10  informally known the Hell's Lovers Motor Cycle Club clubhouse,

11  located in the Denver metropolitan area within the District of

12  Colorado would be the scene of gatherings where Hell's Lovers

13  Motor Cycle Club members and visitors consumed marijuana and

14  cocaine.  The Hell's Lovers Motor Cycle Club clubhouse was the

15  scene of cocaine or marijuana consumption by 30 to 40 persons

16  on any given Friday or Saturday night.  The defendant paid

17  monthly dues to support Hell's Lovers Motor Cycle Club

18  activities, including the maintenance and use of the clubhouse.

19        On or about January 20, 2012, routine and repeated use

20  of marijuana and cocaine at the Hell's Lovers Motor Cycle Club

21  clubhouse was known to the defendant.  The clubhouse was

22  operated under the direction of the Hell's Lovers Motor Cycle

23  Club christened members and officers of the Colorado chapter of

24  the Hell's Lovers Motor Cycle Club.  Defendant knew marijuana

25  was shared and used routinely and regularly at the Hell's

Lovers Motor Cycle Club clubhouse.  The defendant used marijuana at the clubhouse.  The defendant was a christened member of Hell's Lovers Motor Cycle Club and served as treasurer for the Colorado chapter of Hell's Lovers Motor Cycle Club.

By visiting and patronizing the clubhouse, the defendant intentionally aided and abetted the Hell's Lovers Motor Cycle Club Colorado chapter, christened members and officers to maintain the Hell's Lovers Motor Cycle Club clubhouse as a place where marijuana and cocaine were routinely shared and consumed.

The Hell's Lovers Motor Cycle Club clubhouse was supported and maintained by profits from the sales of refreshments and dues paid back to members of Hell's Lovers Motor Cycle Club, including fully patched and christened members, probationary members, prospective members, and, quote, "property" of, unquote, female associates.

Clubhouse expenses such as rent and utilities were paid by the Hell's Lovers Motor Cycle Club chapter treasurer using Hell's Lovers Motor Cycle Club funds collected from the sales of beverages and dues paid by the members and associates. The defendant acted as treasurer for the Colorado chapter of Hell's Lovers Motor Cycle Club.

As part of normal Hell's Lovers Motor Cycle Club clubhouse activities during the period of January 1, 2010,

1    through January 20, 2012, fully patched and christened members

2    routinely brought firearms to the clubhouse, a fact consistent

3    with confidential human source information and the observations

4    of the ATF special agent.

5         On January 20, 2012, a search warrant was executed on

6    the Hell's Lovers Motor Cycle Club clubhouse premises, and

7    several firearms and ammunition were recovered by

8    investigators.  One of the firearms recovered matched

9    ammunition found on the person of a fully patched and

10   christened Hell's Lovers Motor Cycle Club member who was

11   present at the clubhouse and who identified himself as an

12   enforcer for Hell's Lovers Motor Cycle Club.  One of the

13   firearms found on the premises on January 20, 2012, was a

14   distinctive Hell's Lovers Motor Cycle Club patched vest.  The

15   vest displayed a number of Hell's Lovers Motor Cycle Club

16   patches including, quote, "corrupt crew," unquote, patch.  Both

17   firearms were tested and were found to function as designed.

18        For purposes of relevant offense conduct calculations

19   in relation to this plea agreement, the parties stipulate the

20   quantity of cocaine shared and consumed at Hell's Lovers Motor

21   Cycle Club house during the period of December 1, 2011, through

22   January, 2012, was less than 20 grams of cocaine mixture and

23   substance.  The amount of marijuana shared and consumed at the

24   Hell's Lovers Motor Cycle Club clubhouse was less than 1

25   kilogram of marijuana.

1          Your Honor, that concludes the facts.

2          *THE COURT:*  Thank you.

3     *BY THE COURT:*

4     *Q.*  Mr. Myers, are these facts true?

5     *A.*  Yes, they are.

6     *Q.*  Then let's talk about penalty here.  The statutory penalty

7     for the offense charged in Count 32 has maximum term of

8     imprisonment of 20 years, a maximum fine of $500,000.  Both can

9     be imposed.

10         Any term of imprisonment can be followed by a maximum

11    term of three years, and there is a mandatory $100 special

12    assessment.

13         This is a felony conviction.  And as a felony

14    conviction, it can impact your civil rights, your right to

15    vote, hold public office, serve on a jury, possess firearms,

16    and any number of licenses that are issued by governmental

17    sources.

18         In the federal system, we measure terms of

19    incarceration not in years but in months.  There is no

20    automatic reduction, there is no parole.  That means that every

21    month you're sentenced to serve, you'll serve.

22         Now, there are a limited number of ways to reduce a

23    sentence.  And you've given some of those up in accordance with

24    the terms of this plea agreement.

25         The government can bring a motion shortly after

1    judgment is entered.  You could reduce the sentence through a

2    successful appeal and resentencing, but you've given up your

3    right to appeal from a sentence except under limited

4    circumstances.

5         You could challenge a sentence by collateral attack

6    with a petition for writ of *habeas corpus*.  But again, you've

7    waived that right except under limited circumstances.

8         And then ultimately the Bureau of Prisons can give you

9    some credit against your sentence up to 54 days per year in its

10   discretion; but it's not obligated to, and it determines

11   whether or not to give that credit based on your behavior and

12   compliance with the rules and restrictions in whatever

13   institution you're housed.  That determination is made by the

14   Bureau of Prisons each and every year it's not a standard

15   determination.

16        Now, after completion of a prison term, there is a

17   term of supervised release that can be imposed.  And that's

18   here a maximum of three years.

19        With supervised release come a number of conditions

20   that regulate your behavior.  The conditions are mandatory.

21   You have to follow all of them all of the time, and a probation

22   officer supervises you in order to ensure that you do.

23        The conditions fall into two different categories,

24   standard conditions and special conditions.  Standard

25   conditions apply to all terms of supervised release.  Special

1    conditions are unique to you and to your particular

2    circumstances.

3            Now, as you might guess, there are lots of standard

4    conditions.  I'm only going to mention three, but you should

5    understand that there are many more.

6            The three that I draw to your attention are that

7    during the term of supervised release, you cannot commit any

8    new crimes, state, federal, or local; you cannot use, sell, or

9    possess any illegal substance, and you cannot use, sell, or

10   possess any prohibited firearm.  Please understand there are

11   many other standard conditions as well.

12           Then there are special conditions.  And as I said,

13   special conditions are crafted to meet the needs of a

14   particular defendant.  Here I could guess that probably you'll

15   be required to participate in substance rehabilitation program,

16   maybe an alcohol rehabilitation program, if you have a mental

17   health issue maybe a mental health assessment and maybe mental

18   health treatment.  There can be periodic drug tests that you're

19   required to participate in.  And if there are rehabilitation

20   programs, you may be required to pay for the cost of those

21   programs.

22           Now, what's important about these conditions, as I

23   said -- they're mandatory.  And if you don't comply with them,

24   the probation officer with the assistance of the United States

25   Attorney's Office can bring you back here to this courtroom or

1    to another courtroom and ask to have your supervised release

2    term revoked.  And if it's revoked, you can be sent back to

3    prison for another term.

4         Now, the penalty to be imposed here is not just a

5    function of the statute of conviction.  In deciding what

6    penalty is appropriate, I have to consider some other statutes.

7    The most important of these is 18 U.S.C. Section 3553.  It sets

8    out sentencing objectives and the factors that I consider.

9         Your sentence must be sufficient but not greater than

10   necessary to promote respect for the law, provide just

11   punishment, adequately deter criminal conduct, protect the

12   public from further crimes by you, and provide you with needed

13   educational or vocational training, medical care, or other

14   correctional treatment in the most effective manner.

15        In addition, this statute tells me what factors I can

16   consider in crafting a sentence: the nature and circumstances

17   of the offense, your history and characteristics, the kinds of

18   sentences that are available, what the Federal Sentencing

19   Guidelines would require, the need to avoid unwarranted

20   sentence disparities among defendants with similar records

21   found guilty of similar conduct, and in the appropriate case

22   the need for restitution.

23        Now, I know that your attorney and the Government's

24   attorney have estimated the sentence that may apply under the

25   Federal Sentencing Guidelines.  Those -- that estimate begins

1    on page 9 and continues to almost the end of Exhibit 1.

2            There are several things you need to know about the

3    estimate that's contained in the plea agreement.  First of all,

4    it's not binding on the Court.  There is no guaranteed sentence

5    here.

6            Second, this is an estimate.  It is based on the

7    information that the attorneys had at the time you entered into

8    this plea agreement; but at the time of sentencing, we're not

9    going to be working from this document, this plea agreement,

10   and we're not going to be working from this calculation.

11   Instead we're all going to be working from another document

12   called the presentence investigation report that's prepared by

13   the probation office of the Court.  And in that report will be

14   a calculation under the Federal Sentencing Guidelines.

15           Now, you and your attorney will have an opportunity to

16   meet with the probation officer before the report is prepared,

17   and the probation officer will gather other information from

18   other sources in compiling the information in the report.

19           Then you and the Government will have an opportunity

20   to review that report after it's prepared and, if you have any

21   objections, to communicate those objections to the probation

22   officer.

23           If the probation officer doesn't adequately address

24   your concerns in an addendum to the report, then you can raise

25   the issue at the time of sentencing.

1          At the time of sentencing, your attorney and the

2    Government's attorney will make an argument as to what sentence

3    they believe appropriate.  Might focus on the presentence

4    report, might focus on whether it should be a guideline or a

5    non-guideline sentence, might focus on where in the guideline

6    range the sentence should be imposed, might focus on other

7    things altogether.

8          You'll have an opportunity to make a statement, but no

9    one else will be able to make a statement on your behalf.  If

10   there are folks you'd like to have say something about you and

11   your history and characteristics, they may write a letter to

12   the probation officer, not to me, so that the probation officer

13   includes those letters along with the presentence report.  I'll

14   review the report and all the letters that are attached to it.

15         Do you understand the objectives and factors that I'll

16   be evaluating in determining your sentence?

17   *A.*  Yes, I do.

18   *Q.*  Do you understand the maximum sentence that can be imposed?

19   *A.*  Yes, I do.

20   *Q.*  Do you understand that the charge you're pleading guilty to

21   is a felony charge and that this may affect your civil rights?

22   *A.*  Yes, I do.

23   *Q.*  Do you understand that the sentence that is imposed may be

24   more severe than what's calculated this Exhibit 1?

25   *A.*  Yes.

1    *Q.*  Do you understand that no matter what the sentence is, if I

2    accept your plea today, you won't be able to withdraw it at the

3    time of sentencing?

4    *A.*  Yes, I understand.

5    *Q.*  Do you have any questions about sentencing?

6    *A.*  No, I don't have no questions.

7             *THE COURT:*  Thank you.

8             Mr. Pacheco, would you please identify the statement

9    in advance for the record.

10            *MR. PACHECO:*  Yes, your Honor.  It's reflected and

11   marked as Court Exhibit No. 2.

12            On the last page of the document, not the Exhibit A

13   and B but which is denominated as page 7 of the document, it

14   bears both Mr. Myers' signature and my signature.  The record

15   should reflect that we went over this document on the date

16   indicated of June 11 of 2012.

17            *THE COURT:*  Thank you.

18   *BY THE COURT:*

19   *Q.*  Mr. Myers, would you please turn to Exhibit 2.

20            Have you read this document?

21   *A.*  Yes, I have.

22   *Q.*  Have you discussed it with your attorney?

23   *A.*  Yes, I have.

24   *Q.*  Have you asked him all the questions you had about it?

25   *A.*  I have.

1    *Q.*  Has he answered all your questions?

2    *A.*  He did.

3    *Q.*  Indeed, he's represented -- and I'm sure you agree -- that

4    you signed this document and your signature is at the end of

5    document.

6    *A.*  Yes.  I signed this.

7    *Q.*  Thank you.

8          Let's go over the constitutional rights you're giving

9    up today by making your plea of guilty.

10          Under the United States Constitution, you have a

11    number of rights and protections, and you're giving up some of

12    those by making your plea of guilty today.  First and foremost,

13    the Constitution guarantees to you that when charges like this

14    are brought against you, you can have them determined by a jury

15    in a jury trial.

16          Now, ordinarily that trial would take place in this

17    courtroom, and the jury would sit to my left in the jury box.

18    12 people would be selected to serve on the jury, and you and

19    your attorney and the Government's attorney would participate

20    in the selection of those people.  You could exclude any

21    potential juror who could not be fair and impartial or who was

22    unwilling or unable to follow the law.

23          Now, once those jurors are selected, they all take a

24    solemn oath promising to consider only the evidence presented

25    here in the courtroom and to follow the instructions they are

1    given as to the law.

2         One of the instructions that I give them tells them

3    that in order to convict you, they must reach a unanimous

4    decision, finding that the Government has proven every element

5    of a charge against you beyond a reasonable doubt.  Now, if any

6    one of them has a reasonable doubt as to the Government's proof

7    of any element, you cannot be convicted.

8         Now, during the trial process, you have a number of

9    other constitutional rights.  For example, you have the right

10   to remain silent.  That has several aspects.  First it means

11   that no one can force you to answer any questions.  You cannot

12   be forced to testify.

13        Secondly, the jury cannot consider your silence in

14   determining whether the Government has proven the charge or

15   charges against you.

16        Third, even if -- even if you remain silent, your

17   attorney can challenge all the evidence put forward by the

18   Government, cross-examine its witnesses, and argue to the jury

19   and argue to me.

20        Finally, because this is a right, you can waive it.

21   You can decide to testify if you want to.  You can decide

22   before trial or during the trial.  You can put on other

23   evidence, call other witnesses if you choose.  In fact, if

24   there are other witnesses you want to call to testify on your

25   behalf and they're reluctant to come forward, I would compel

1  them to come forward to testify.

2          Now, you have yet another constitutional right during

3  the trial process, and that's the right to be represented by

4  counsel and where you can't afford counsel to have counsel

5  appointed to represent you without any cost to you.

6          Now, I know that Mr. Pacheco has negotiated this plea

7  agreement on your behalf and that you've reviewed it and

8  considered it carefully with him; but if you would prefer to go

9  to trial, I can assure you that I have confidence in

10  Mr. Pacheco's ability to represent you ably and well at trial.

11  And if you went to trial and you were convicted, you could

12  appeal both from your conviction and also from your sentence.

13          But by entering this plea agreement, you're giving up

14  your right to a trial.  You will not be able to appeal from

15  your conviction and for the most part you won't be able to

16  appeal from your sentence.

17          Do you understand that you're waiving your right to a

18  jury trial and other constitutional rights associated with it

19  if you proceed with your plea of guilty today?

20  A.  Yes, I do understand.

21  Q.  Is that what you want to do?

22  A.  Yes, ma'am, I do.

23  Q.  Has anybody pressured you to make this plea today?  And

24  before you answer, let me define "anybody" for you.  It has the

25  broadest definition possible.  It includes your family and

1   friends and neighbors and strangers and enemies and folks you

2   used to associate with, folks you like, folks you don't like,

3   law enforcement personnel, court personnel, even the attorneys,

4   and anybody else.  Has anybody pressured you to enter this plea

5   today?

6   *A.*  No, ma'am.

7   *Q.*  Has anybody promised you something that isn't in the plea

8   agreement?

9   *A.*  No, ma'am.

10  *Q.*  Have you had enough time to review and consider and discuss

11  your plea and plea agreement with Mr. Pacheco?

12  *A.*  Yes, I've had adequate time.

13  *Q.*  Are you satisfied with him as your attorney?

14  *A.*  Yes, I am.

15  *Q.*  Do you have any concerns, complaints, or criticism about

16  the legal representation you've received?

17  *A.*  I have none.

18  *Q.*  Do you want to ask him any questions?

19  *A.*  Not at this time, your Honor.

20  *Q.*  Do you have any questions for me?

21  *A.*  Not at this time.

22  *Q.*  Well, now is the time to finalize your decision.

23  *A.*  I have thought about this clearly, and this is my decision.

24  *Q.*  Okay.  This plea agreement, the one you and I have been

25  discussing, Exhibit 1:  Do you still want to proceed with it?

1   *A.*  Yes, ma'am.

2   *Q.*  You still want to enter your plea of guilty to Count 32 in

3   the superseding indictment?

4   *A.*  Yes, ma'am.

5           *THE COURT:*  Thank you.

6           Mr. Pacheco, any reason not to accept the plea and

7   plea agreement?

8           *MR. PACHECO:*  No, ma'am.

9           If I could only add one thing.  I know it's relatively

10  superfluous, but sometimes appearances are deceiving.  The

11  record should reflect that I discussed the possibility of

12  deportation with Mr. Myers.  Mr. Myers is a United States

13  citizen, so we don't have the consequence of deportation.

14          *THE COURT:*  Thank you.

15          Mr. Till?

16          *MR. TILL:*  I have nothing to add, your Honor.

17          *THE COURT:*  All right.  This plea agreement

18  anticipates that the Government will dismiss all counts other

19  than Count 32 in the superseding indictment.  Would you make

20  that motion at this time.

21          *MR. TILL:*  Yes, your Honor.  Your Honor, at this time

22  I would like to enter the Government's motion to dismiss

23  Count 31 in the superseding indictment and the original

24  indictment as to Mr. Johnie Myers in its entirety.

25          *THE COURT:*  Thank you.

```
 1              Does Count 32 reflect seriousness of the actual

 2    offense behavior?

 3              MR. TILL:  Yes, it does.

 4              THE COURT:  And will the sentencing objectives be

 5    undermined in any way if I accept this agreement?

 6              MR. TILL:  They will not be undermined, your Honor, in

 7    any way.

 8              THE COURT:  Thank you.

 9              Mr. Pacheco, I assume you have no objection.

10              MR. PACHECO:  No, ma'am.

11              THE COURT:  Thank you.

12              Do either of you further desire to supplement the

13    record?

14              MR. TILL:  I have nothing, your Honor.

15              MR. PACHECO:  Not the record, but I do have a

16    question.

17              THE COURT:  Okay.  Go ahead and ask it.

18              MR. PACHECO:  You indicated that the probation

19    department would be interviewing several people or collecting

20    information.  Is his, Mr. Myers', case going to be different

21    than the order you have entered as to other codefendants that

22    there is not to be an independent investigation?

23              THE COURT:  No.

24              MR. PACHECO:  Thank you.

25              THE COURT:  Based on the record made in open court
```

1    today, then, in Case No. 12-cr-10, encaptioned the United

2    States of America vs. Johnie A. Myers, I hereby find that the

3    defendant is fully competent to enter an informed plea, he's

4    been represented through the course of this case and this

5    proceeding, and he has no objection, criticism, or complaint as

6    to the representation he has received.

7           He's aware of the nature of the charges against him

8    and the effects and consequences of his plea of guilty.  He has

9    knowingly and voluntarily waived fundamental constitutional

10   rights, including his right to a jury trial.  He understands

11   that the penalty to be imposed by the Court will be based in

12   part on the facts stated in the plea agreement and may exceed

13   the calculations in the plea agreement.  His plea of guilty is

14   voluntary and knowingly made, and the charge and plea is

15   supported by an independent basis in fact.

16          In accordance with the terms of the plea agreement,

17   the Government has orally moved to dismiss Count 31 in the

18   superseding indictment brought against Mr. Myers and all counts

19   in the original indictment brought against Mr. Myers.  I find

20   that good cause exists to grant the motion to dismiss.  The

21   charge at Count 32 is represented by the Government to be

22   reflective of the seriousness of the actual offense behavior

23   and would not undermine the statutory purposes of sentencing.

24          Therefore, it is ordered that Court Exhibits 1 and 2

25   are received, the plea as made in open court today is accepted,

1    and the defendant is adjudged guilty as charged in Count 32 of

2    the superseding indictment.  The Government's motion to dismiss

3    the other counts is granted; however, of effect of this order

4    is stayed until the time of sentencing.

5            The probation department will conduct a presentence

6    investigation and submit a presentence report as required by

7    Rule 32.  The defendant, with the assistance of counsel, will

8    participate in the investigation and cooperate fully with the

9    probation department.

10           I understand that you have set a sentencing hearing

11   for -- well, actually, I don't.

12           *THE COURTROOM DEPUTY:*  It's October 30 at 11:00 a.m.

13           *MR. PACHECO:*  No, ma'am.  It was originally set for

14   October 9 at 11:00.

15           *THE COURTROOM DEPUTY:*  Oh.  Hang on.  Maybe I

16   misspoke.

17           I think the original order of -- I'm sorry.  I'm on

18   the wrong date.  He's right.  It's October 9 at 11:00 a.m.  I

19   was already into tomorrow.

20           *THE COURT:*  All right.  Does that work for everybody?

21           *MR. PACHECO:*  Yes, ma'am.

22           *MR. TILL:*  Yes, your Honor.

23           *THE COURT:*  Okay.  That will be our sentencing date.

24           Trial on the counts brought against Mr. Myers was

25   vacated as of the filing of the notice of disposition.

1    With regard to motions, it appears that there --

2    MR. PACHECO:  I'm sorry.  Pursuant to our plea

3  agreement, I filed none on behalf of Mr. Myers.

4    THE COURT:  Well, you have some pending ones.  You

5  have Docket No. 256, which is a motion to continue a trial

6  date, and Docket No. 257, which is a motion for extension of

7  time to file a disclosure of informant.

8    MR. PACHECO:  We would withdraw those.

9    THE COURT:  Okay.  Any objection?

10    MR. TILL:  No, your Honor.

11    THE COURT:  They're deemed withdrawn then.

12    Any further business by the Government or the

13  defendant?

14    MR. PACHECO:  No, ma'am.

15    MR. TILL:  Your Honor, the Government agrees that the

16  defendant should remain on bond pending sentencing.

17    THE COURT:  Thank you.

18    Then that will conclude this hearing.

19    And I thank you, Mr. Till, Mr. Pacheco, our Marshal's

20  Service, and our court staff.  I'll see you next at the time of

21  sentencing.  We'll stand in recess until then.

22    MR. PACHECO:  Thank you, your Honor.

23    THE COURT:  You're welcome.

24    (Recess at 2:51 p.m.)

25                         *   *   *   *   *

1          **REPORTER'S CERTIFICATE**

2        I certify that the foregoing is a correct transcript from

3    the record of proceedings in the above-entitled matter.  Dated

4    at Denver, Colorado, this 20th day of August, 2013.

5

6                                          *S/Paul A. Zuckerman*
                                           Paul A. Zuckerman
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25