1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 12-cr-00010-MSK

UNITED STATES OF AMERICA,

 Plaintiff,

vs.

JOHNIE A. MYERS,

 Defendant.

_____

**REPORTER'S TRANSCRIPT**
Sentencing Hearing

_____

 Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 9:02 a.m., on the 17th day of October, 2012, in Courtroom 901A, United States Courthouse, Denver, Colorado.

**APPEARANCES**

 GUY TILL, Assistant U.S. Attorney, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the plaintiff.

 NORMANDO PACHECO, Attorney at Law, 2371 Locust, Denver, CO 80207, appearing for the defendant.

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

<pre>
 1                    P R O C E E D I N G S

 2          THE COURT:  Court is convened today in Case No.

 3  12-cr-10.  This is encaptioned for purposes of today's hearing,

 4  a sentencing hearing, as the United States of America v. Johnie

 5  A. Myers.

 6          Could I have entries of appearance, please.

 7          MR. TILL:  Good morning, Your Honor.  Your Honor, I'm

 8  Guy Till.  I'm an assistant U.S. attorney representing the

 9  Government this morning.

10          THE COURT:  Good morning and welcome.

11          MR. TILL:  Thank you, Your Honor.

12          MR. PACHECO:  Good morning, Your Honor.  Normando

13  Pacheco here on behalf of defendant Mr. Myers, who is in court,

14  seated to my left.

15          THE COURT:  Good morning and welcome.

16          Are you all ready to proceed?

17          MR. TILL:  Yes, Your Honor.

18          MR. PACHECO:  Yes, ma'am.

19          THE COURT:  Mr. Pacheco, would you and your client

20  please approach the lectern.

21          MR. PACHECO:  Yes, ma'am.

22          THE COURT:  This matter is before the Court for

23  purposes of sentencing.  The record reflects that the defendant

24  was charged in a 32-count Indictment filed on January 9, 2012.

25  He was charged in Count 31 with conspiracy to use and maintain
</pre>

1   a drug-involved premises in violation of 21 U.S.C. 846, 856(a)

2   and (2), and he was charged in Count 32 with using and

3   maintaining a drug-involved premises and intentionally aiding

4   and abetting same, in violation of 21 U.S.C. Section 856(a)(1)

5   and (2) and (b) and 18 U.S.C. Section 2.  He also was charged

6   in a forfeiture allegation brought pursuant to 18 U.S.C. 3565

7   and 28 U.S.C. Section 2461(c).  He entered a plea of not guilty

8   to the criminal charges and denied the forfeiture charge.

9         Then on February 6, 2012, the 38-count Superseding

10   Indictment was filed in the District of Colorado, found at

11   Docket No. 180.  He was charged in the same counts and

12   forfeiture allegation.  He entered a plea of not guilty to the

13   criminal counts and denied the forfeiture allegation.

14         Then on June 21, 2012, he changed his plea to a plea

15   of guilty to Count 32 of the First Superseding Indictment, the

16   Court accepted his plea, and he was adjudged guilty as charged

17   in Count 32.  The Government orally moved to dismiss the

18   remaining count of the First Superseding Indictment and the

19   counts in the original Indictment.  The Court granted that oral

20   motion, but stayed the effect until the time of sentencing.

21   Thus, Mr. Myers is before the Court for purposes of sentencing

22   on his conviction of violating 21 U.S.C. Section 856(a)(1) and

23   (2) and (b) and 18 U.S.C. Section 2, as charged in Count 32 of

24   the First Superseding Indictment.

25         In preparation for this hearing, I've had the

1    opportunity to review a number of documents.  The initial

2    presentence report found at Docket No. 627, a motion for a

3    non-guideline sentence found a 642, a revised presentence

4    report at 662, an addendum to that report at 663, a motion for

5    a downward departure under the sentencing guidelines at 684, a

6    revised presentence report at 690, and an addendum at 691.

7            Let me inquire of you, counsel, whether you and the

8    defendant have had adequate opportunity to review and consider

9    these documents.

10            MR. PACHECO:  Me, first?

11            THE COURT:  Whoever.

12            MR. PACHECO:  Yes, ma'am.  I've gone over that with

13   Mr. Myers, and we're in agreement with the calculation that's

14   on page 7, which the base offense level of this offense should

15   be level 12.

16            MR. TILL:  Your Honor, also I've had a chance to

17   review all the documents.

18            THE COURT:  All right.  Are there any other documents

19   that should be considered?

20            MR. PACHECO:  Judge, I have one -- just photographs of

21   the defendant on a charity run that I previously submitted to

22   the Court, but was returned back to me.  I don't know if the

23   Court was interested in seeing that.

24            THE COURT:  Those documents are usually attached to

25   the presentence report.  Were they attached here?

1     MR. PACHECO:  We had submitted them to the Probation

2  Department.  They sent them back to me.  Basically, the only

3  thing I wanted to emphasize through the photographs, that his

4  history of charity and contribution to the community have been

5  documented before we came to federal court.

6     THE COURT:  I believe there were pictures that were

7  attached as Exhibit C.

8     PROBATION OFFICER:  Your Honor, that's correct, there

9  are some pictures and some letters attached.  What you're

10 speaking about, I had received some documentation from a

11 co-defendant in the case on behalf of Mr. Myers, and I was not

12 comfortable attaching that to the presentence report, so I

13 forwarded that to his attorney, based on Mr. Myers'

14 recommendation since he was retained counsel.  That was not

15 appropriate, since I didn't feel it was submitted from a

16 co-defendant on this defendant's behalf.

17    THE COURT:  All right.  Are these duplicative,

18 essentially, of what has already been submitted?

19    MR. PACHECO:  Yes, ma'am.

20    THE COURT:  All right.  Then I've considered

21 everything that has been submitted.

22    Is there any dispute with the factual contents in the

23 presentence report?

24    MR. TILL:  Not from the Government.

25    MR. PACHECO:  No, ma'am.

1        THE COURT:  Any dispute with the calculation of the

2   sentencing guidelines as set forth in the presentence report?

3        MR. PACHECO:  No, Your Honor.

4        MR. TILL:  No, Your Honor.

5        THE COURT:  The Government has requested a departure

6   under Section 5K1.1 of the guidelines.  Would you make your

7   showing, please.

8        MR. TILL:  Your Honor, the defendant did come in and

9   debrief.  He was unusually candid and forthcoming.  He

10  simply -- as my impression was, he answered every question we

11  gave him directly and truthfully.  He wasn't withholding.  He

12  wasn't trying to protect himself or embellish.  And it was very

13  helpful for us to understand the relative positions, roles, and

14  responsibilities of the different people that were in the club,

15  Hells Lovers motorcycle club, involved with the drug-involved

16  premises in this case.  He did not testify in court, but I

17  believe that his information was direct and -- by not

18  contradicting himself, he sort of sets himself up as an

19  unusually good potential witness, Your Honor.

20        A lot of times people give us one version, and they

21  overlay it with the other version until the case agents get

22  them to tell the truth.  By then, they have stepped on their

23  veracity.  He wasn't that way.  He just was truthful.

24        THE COURT:  All right.  What are you asking for?

25        MR. TILL:  We're asking for 40 percent, Your Honor.

1          *THE COURT:*  A 40 percent reduction from what?

2          *MR. TILL:*  From 10 months, Your Honor.

3          *THE COURT:*  So you believe that a 6-month sentence is

4   appropriate?

5          *MR. TILL:*  Yes, Your Honor, I do.

6          *THE COURT:*  Anything you want to add, Mr. Pacheco, to

7   this motion?

8          *MR. PACHECO:*  For the downward departure?

9          *THE COURT:*  Yes.

10          *MR. PACHECO:*  No, I just have an argument for the

11   sentence to be imposed.

12          *THE COURT:*  Well, you've also filed a motion for

13   imposition of a non-guideline sentence, a variant sentence.

14   Would you like to argue that now?

15          *MR. PACHECO:*  Well, Your Honor, I believe that the

16   Court in this particular case has seen that there are three

17   separate, to me, components of people who were involved in this

18   transaction.  There were those, such as defendant --

19   co-defendant, Mr. Schrah, that basically were bike riders that

20   enjoyed riding motorcycles and formed this organization.  As

21   you know through the subsequent adjustments that have been

22   made, I think one thing I definitely would like to stress,

23   initially when we calculated the sentence out, there was a

24   question of whether or not there would be a level 2 increase

25   for use of a weapon.  On page 12 of the plea agreement,

1    specifically states that the defendant at all points in time

2    within his capacity as an officer of the organization

3    specifically told members not to carry weapons in the

4    clubhouse, where eventually they were located.

5            Second, I think the defendant, as I've indicated, has

6    no significant criminal history whatsoever, down to a

7    misdemeanor some time back, considerable period of time ago.

8            There is a second group of people that are, I guess,

9    right straight out of the movies, for lack of a better analogy

10   in life, which is guys that like to ride, they're a little

11   wild, they use drugs and carry on and like to party.  The third

12   component in this case was far different situation than this

13   defendant, where you have people actively selling drugs, and

14   they're selling drugs for livelihood and significant amounts.

15   None of that was ever, ever, in any way stated to be any kind

16   of responsibility or the defendant participated in those

17   illegal activities.

18           Also we asked for a non-guideline sentence

19   particularly because of the health issues that the Probation

20   Department has submitted to the Court.  The defendant is now

21   retired.  And based on his past conduct of the acts of charity

22   which he has done on these Santa Claus runs that he and his

23   wife participate in, we believe there is sufficient reasons for

24   a non-guideline sentence in connection with this case.

25           THE COURT:  So what sentence do you believe is

1    appropriate?

2          MR. PACHECO: Judge, I believe a zero to 4-month. We

3    would ask the Court in the first instance for probation. I

4    think -- I'd make that request pursuant 5C1.1, particularly (a)

5    and (b), which indicates that if we're in the guideline range

6    under the table itself, that the defendant would be eligible

7    for probation. We'd respectfully request that he would be a

8    good candidate for probation. The Probation Department here

9    indicates that he has at all times complied with every term and

10   condition requested by the Probation Department during the

11   course of these proceedings. Given his age and his health, we

12   believe that probation would be appropriate in this case. And

13   I believe that the defendant has indicated to me that as a

14   condition of that probation, that he has no hesitation

15   whatsoever to perform effective community service should the

16   Court grant him the privilege of probation.

17         THE COURT: All right. I understand you're requesting

18   that as a variant sentence, not under the guidelines, correct?

19         MR. PACHECO: Yes, ma'am.

20         THE COURT: All right. Response.

21         MR. TILL: Your Honor, I was thinking about this, this

22   morning. And one thing I was realizing is that there are I

23   think 58 U.S. attorneys, so there is -- you, as the Court, I'm

24   sure you see ten times or twenty times as many cases as I do.

25   You understand sentencing defendants and so forth better than I

1    do.  And I think it might be a hard decision for the Court to

2    make, but I believe that he should get a guideline sentence,

3    and I'm not sure if that should include home confinement or

4    Community Corrections or a period of imprisonment.  So I -- I

5    don't object to whatever -- I guess what I'm saying, I don't

6    have an objection to whatever the Court does with this

7    defendant with regard to how the Court sentences him.

8         THE COURT:  Why is it that you think a variant

9    sentence is inappropriate?

10        MR. TILL:  Your Honor, it could be that I'm just -- I

11   don't know that I've hardly ever agreed to a variant sentence.

12   So I have to admit, it might just be me sticking to my

13   practice.  But I do believe in the guidelines, and I do at the

14   same time respect the Court's power and authority here.  And I

15   will concede that I -- you know, he has an unusual record for

16   good works in the community.  He clearly wasn't trying to go

17   out and establish this record in contemplation of this day in

18   court, so he is somebody who has done many good things.  So

19   there are, you know, obviously good things about this

20   defendant.

21        So I will admit, I'm very close to saying that I

22   don't, you know, object to the variant sentence; but I am

23   asking for a guideline sentence.  And at the same time, Your

24   Honor, I am actually saying I don't object to a variant

25   sentence.  Whatever the Court decides here I believe will be

1    the correct thing.

2           THE COURT:  All right.  Thank you.

3           We'll move to allocution, then.

4        MR. PACHECO:  That's all.

5           THE COURT:  Mr. Myers, is there anything you want me

6    to know?

7           THE DEFENDANT:  Yes, ma'am.  With all of this going on

8    and what I've been involved with, I'd like to apologize.  I

9    apologize to a lot of people in the community for my actions,

10   and especially my family here today.  That's all I have to say.

11          THE COURT:  Thank you.

12          Any further argument before I announce the sentence I

13   intend to impose?

14       MR. PACHECO:  No, ma'am.  We appreciate the time

15   you've given us.

16       MR. TILL:  No, Your Honor, thank you.

17          THE COURT:  Then I'll announce the sentence I intend

18   to impose.  Of course, counsel, you'll have a final opportunity

19   to make legal objections before judgment is entered.  If you

20   believe that the sentence I described is premised upon error or

21   I raise an issue that you haven't had adequate opportunity to

22   address, I invite you to request a continuance.

23          Imposition of a sentence in a federal criminal case is

24   governed by a number of statutes.  The umbrella statute is 18

25   U.S.C. Section 3553.  In imposing sentence in this case, as in

1   all cases, the Court is required to consider the objectives and

2   factors that are set out in this statute.   The statute requires

3   a sentence to be sufficient but not greater than necessary to

4   satisfy particular objectives; the sentence must reflect the

5   seriousness of the offense; promote respect for the law;

6   provide just punishment; adequately deter criminal conduct;

7   protect the public from further crimes by the defendant; and

8   provide the defendant with needed educational or vocational

9   training, medical care, or other correctional treatment in the

10  most effective manner.

11          To fashion a sentence that meets these objectives, the

12  statute directs the Court to consider the nature and

13  circumstances of the offense; the history and characteristics

14  of the defendant; the kinds of sentences that are available;

15  the sentence prescribed by the federal sentencing guidelines;

16  the need to avoid unwarranted sentence disparities among

17  defendants with similar records found guilty of similar

18  conduct; and in the appropriate case, the need for restitution.

19          At the beginning of this hearing, I identified the

20  documents that I had studied in preparation for the hearing,

21  confirmed with counsel that they and the defendant had had an

22  opportunity to review and consider those documents, and that

23  there were no additional documents that provided different or

24  material information that the Court should consider.   The

25  parties stipulated that there was no objection to the facts

1   contained in the presentence report and that there was no

2   objection to the guideline calculation contained in the report.

3   It is that guideline calculation that we begin with.

4        The Base Offense Level for violation of 21 U.S.C.

5   Section 856(a)(1) and (2) and (b) is set by Section 2D1.8(a)(1)

6   at 12.  This is because the stipulation of facts contained in

7   the plea agreement provide that the defendant is responsible

8   for transactions involving 20 grams of a cocaine mixture and

9   less than 1 kilogram of marijuana.  Approximately 20 grams of

10  cocaine powder is translated to 4 kilograms of marijuana.  And

11  when this amount is added to less than 1 kilogram of marijuana,

12  the range is at least 2.5 kilograms but less than 5 kilograms

13  of marijuana.  This results in a Base Offense Level of 12

14  pursuant to Section 2D1.1(c)(14).

15       There is a specific offense characteristic, and that

16  is because the defendant participated in the maintenance of a

17  premises for the purpose of manufacturing and distributing a

18  controlled substance.  According to the stipulation of facts,

19  the defendant paid monthly dues to support the Hells Lovers

20  motorcycle club activities, which included maintenance and use

21  of a clubhouse.  He was aware of illicit drug use by other

22  members of the club.  This results in a two-level increase, and

23  an Adjusted Offense Level of 14.  Then there is a downward

24  adjustment for his acceptance of responsibility pursuant to

25  Section 3E1.1(a) of the guidelines.  This is a two-level

1   reduction, resulting in a Total Offense Level of 12.

2          Then we turn to the second component in calculating a

3   sentence under the federal sentencing guidelines, and that is

4   criminal history.  Here, there are no criminal history points.

5   Therefore, the defendant is placed in Criminal History Category

6   I.

7          With a Criminal History Category of I and an offense

8   level of 12, the guidelines recommend a custodial time period

9   of 10 to 16 months of incarceration, supervised release of 1 to

10  3 years, a fine of 3,000 to $30,000, and a special assessment

11  of $100.

12         The Government has filed a 5K1.1 motion under the

13  guidelines, requesting a 40 percent reduction from the bottom

14  of the guideline range for purposes of accounting for

15  Mr. Myers' cooperation with the Government.  The Government has

16  made an appropriate showing under the guidelines; and

17  therefore, the Court grants that motion.  That lowers the

18  bottom end of the guideline range to a 6-month incarceration

19  period.

20         The defense asks for imposition of a non-guideline

21  sentence.  And pursuant to the provisions of 18 U.S.C. Section

22  3553, the Court is required to consider what sentence is

23  appropriate to serve the sentencing objectives I referred to a

24  few minutes ago and the Court is required to consider the

25  factors that are in -- set out in that statute.

1        The argument that is made here is that the defendant

2   has no criminal history.  That is taken into account in the

3   calculation under -- of the guidelines.  Therefore, the Court

4   does not consider that for the purpose of a variant sentence.

5        The Court's attention is drawn to the health issues of

6   the defendant.  There has been no showing that those health

7   issues impact the ability to serve a sentence as would be

8   provided by the newly calculated guideline range.  And

9   therefore, the Court does not consider the health issues.

10       The Court has been directed to the various acts of

11  charity that have been performed by the defendant.  And with

12  regard to this, there sometimes is a misconception as to what

13  courts consider for purposes of sentencing.  Sentencing is not

14  about determining whether someone is a good person or a bad

15  person.  Most people have good behaviors and objectionable

16  behaviors.  And here, Mr. Myers has engaged in many wonderful

17  behaviors and good behaviors; but the Court is not sitting here

18  deciding whether or not he's a good person or a bad person, and

19  I'm not weighing the good things that he has done as against

20  the bad things he's done.  That's not the role of the Court.

21       Instead, what I am looking at is exactly what the

22  statute requires me to look at, which is the nature and

23  circumstances of the offense and the history and

24  characteristics of the defendant.  And I look at those things

25  in order to determine both the seriousness of the offense and

1     what sentence is necessary to promote respect for the law and

2     provide just punishment, deter criminal conduct, and protect

3     the public from further crimes by the defendant.

4          Here, I'm not sure that we need to protect the public

5     from dangerous crimes by the defendant.  This defendant has

6     been convicted of a crime that really is a passive act.  He's

7     an enabler; he enabled criminal activity to go on.  And I agree

8     with Mr. Pacheco's distinction between those bike riders who

9     participated in this club who essentially paid their dues and

10    turned a blind eye to what was going on from those bike riders

11    who used drugs and those bike riders who sold drugs.

12         Now, Mr. Myers falls into the first category.  And I

13    don't mean to diminish the seriousness of the conviction here,

14    because those law-abiding citizens who turned a blind eye to

15    criminal behavior enabled it.  And we all are in a circumstance

16    where if we enable crime, we are facilitating it.  That is

17    exactly what Mr. Myers did.  But it's not of the same degree of

18    seriousness as the conduct of the bike riders who used drugs,

19    and certainly not the bike riders who sold drugs.  So taking

20    into account the seriousness of the offense, I note that it is

21    serious, but not as serious as the conduct of others involved

22    in this case.

23         As to the objective of promoting respect for the law,

24    Mr. Myers has a lengthy history of following the law and

25    abiding by the law.  And as I said, his actions in this case

1    were, essentially, passivity, tolerating the breaking of the

2    law, not advocating it.

3         Then I look to whether or not we have a concern with

4    regard to providing a sentence that will deter criminal

5    conduct.  Here, there is a need for a sentence that deters

6    criminal conduct, a reminder to all law-abiding citizens that

7    you can't turn a blind eye to criminal conduct, you can't

8    tolerate it, you cannot pretend that it's not happening,

9    because when you do that, you are really encouraging people to

10   engage in criminal conduct.

11        Now, I know that the folks sitting here in the

12   courtroom are not really concerned with the objectives of

13   sentencing.  They're concerned with the ultimate outcome here,

14   whether Mr. Myers is going to go to jail or not.  But it is the

15   process by which we determine that, that is important.

16        In imposing sentence here, I look to Mr. Myers' role

17   in this offense and what is appropriate as a punishment for

18   that role; I look to whether he is likely to commit further

19   crimes in the future; I look to whether or not some punishment

20   should be imposed here to discourage people from doing what he

21   did.  And taking those factors into account, I believe that a

22   variant sentence is appropriate.  I think a sentence of

23   probation of 2 years is an appropriate sentence.  But I also

24   believe that imposition of a fine is appropriate.

25        And the parties really haven't addressed the issue of

1   fine here, but I find that Mr. Myers is able to pay a fine and

2   a fine is appropriate given the nature of the conduct in which

3   he engaged.  I intend to impose a fine of $6,000.  And I am

4   required to impose a special assessment of $100.

5          So to recap what sentence I intend to impose, a

6   special assessment of $100; a fine of $6,000, both will be due

7   and payable immediately; and a probationary period of 2 years

8   with the recommended conditions as stated in the presentence

9   report.

10          Any need for clarification or further explanation?

11          MR. PACHECO:  Yes, Judge.  When you indicated that the

12   amount of $6,000 would be due today, could we ask that that

13   amount be spread over the time of the probation of two years?

14   The reason I make that request is the probation has submitted

15   to this court, they final -- they have the present ability to

16   pay a fine.  However, it does indicate he is now on retirement

17   and medical disability, which severely limits the amount that

18   he has.

19          THE COURT:  I understand that.  But the presentence

20   report reflects that he has a 401K plan he has been drawing

21   from in order to cover the deficit.  The amount of the 401K

22   plan has not been disclosed in the presentence report.  What is

23   the amount of the 401K plan?

24          MR. PACHECO:  Zero dollars, he's indicated to me.

25          THE COURT:  So how is he covering his monthly

1    expenditures from his 401K?

2            THE DEFENDANT:  I'm receiving $1,000 retirement from

3    FedEx.

4            THE COURT:  Is that listed as part of your income

5    here?  It says retirement income, $1,200.

6            THE DEFENDANT:  That's before taxes.

7            THE COURT:  Then it says the defendant has also filed

8    for disability benefits.  Are you receiving any?

9            THE DEFENDANT:  No, I'm not receiving any.

10           THE COURT:  He reported he is paying expenses from

11   moneys drawn -- withdrawn from his 401K plan.  When did you run

12   out of money in your 401K plan?

13           THE DEFENDANT:  Since I paid off all the bills, and I

14   had just a little bit to live on.

15           THE COURT:  When did you run out?

16           THE DEFENDANT:  A couple of months ago.

17           THE COURT:  Does this $1,200 retirement income reflect

18   your entire family income?

19           THE DEFENDANT:  Yes, right now -- my household, yes.

20           THE COURT:  Okay.  So your wife is not receiving any

21   income?

22           THE DEFENDANT:  No.

23           THE COURT:  How long has that been going on?

24           THE DEFENDANT:  Pardon me?

25           THE COURT:  How long has that been going on?

1          MR. PACHECO:  The question is, how long has your wife

2     not been working?

3          THE DEFENDANT:  Well, technically, we're not legally

4     married.  We've been living together for ten years.

5          THE COURT:  She has not worked for the entire ten

6     years?

7          THE DEFENDANT:  A little bit here and there.

8          THE COURT:  All right.  Do you have any plans to sell

9     any of the six vehicles -- seven vehicles you have?

10          THE DEFENDANT:  I could, yes, Your Honor.

11          THE COURT:  All right.  What's the position of the

12     Government?

13          MR. TILL:  Your Honor, I believe that some kind of

14     relatively accelerated payment plan in the first half of

15     probation would be appropriate.

16          THE COURT:  All right.  So you would request that the

17     fine be paid within the first year; is that what you're saying?

18          MR. TILL:  Yes, Your Honor.  I think sometimes if we

19     have a fine that's still not paid at the end of the period, we

20     run out of time, so --

21          THE COURT:  All right.

22          Mr. Pacheco.

23          MR. PACHECO:  We can't argue with that, Judge.  That

24     seems fair.

25          THE COURT:  All right.  This is what I will do, is, it

1    does not appear that this fine can be paid over time because

2    there is inadequate income to support the expenses that are

3    being incurred, so there is no extra money on a monthly basis

4    to apply to the fine.  It's going to require the liquidation of

5    assets in order to pay the fine.  And, therefore, I'm going to

6    order that the fine be paid within the first six months of the

7    probationary period.

8              Any further argument or need for clarification?

9              MR. TILL:  Not from the Government, Your Honor.  Thank

10   you.

11             MR. PACHECO:  No, ma'am.  Thank you for the time you

12   took to consider this case.

13             THE COURT:  Then I'll impose judgment at this time.

14             Having considered the provisions of 18 U.S.C. Section

15   3553, both the sentencing objectives and the sentencing

16   factors, pursuant to the Sentencing Reform Act of 1984, it is

17   the judgment of the Court that the defendant, Johnie A. Myers,

18   be placed on probation for a term of 2 years.  While on

19   probation, he will not commit another federal, state, or local

20   crime; he will not possess a firearm as defined in 18 U.S.C.

21   Section 921; and he'll comply with the standard conditions that

22   have been adopted by the Court.

23             This sentence does impose a fine, and it will be a

24   condition of probation that the defendant pay the fine within

25   the first 6 months of the probationary period.

1          While on probation, the defendant may not lawfully

2     possess a controlled substance -- he may not unlawfully possess

3     a controlled substance; he will refrain from any unlawful use

4     of a controlled substance; he will submit to at least one drug

5     test within 15 days of placement on probation and at least two

6     periodic tests thereafter; he'll cooperate in the collection of

7     DNA as directed by the probation officer.

8          And I will, since there is a deferred payment on the

9     fine, impose certain special conditions of probation, which are

10    reasonably related to the factors enumerated in 3553 and also

11    3563.

12         The defendant will not incur any credit charges or

13    open any additional lines of credit without the approval of the

14    probation officer.  And that approval will be withheld until

15    the fine is paid.  As directed by the probation officer, the

16    defendant will apply any moneys he receives from income tax

17    refunds, lottery winnings, inheritances, judgments, and any

18    anticipated or unexpected financial gains to the outstanding

19    court-ordered financial obligation.  And, finally, the fine in

20    the amount of $6,000 will not bear interest, but will be paid

21    within 6 months of the advent of probation.

22         The special assessment of $100 is imposed and is due

23    and payable immediately.

24         Mr. Myers, I advise of your right to appeal this

25    sentence.  If you desire to appeal, a Notice of Appeal must be

1    filed with the Clerk of the Court within 14 days after judgment

2    is entered.  If you don't file that Notice of Appeal within

3    that time period, you lose your right to appeal.

4            Now, ordinarily, Mr. Pacheco would file the Notice of

5    Appeal for you.  But if for some reason you wish to appeal, and

6    he's unable or unwilling to file that Notice of Appeal within

7    the requisite time period, you may request, and I will direct,

8    the Clerk of the Court to file a Notice of Appeal on your

9    behalf.

10           I exonerate the defendant's bond at this time.

11           Is there any further business to bring before the

12   Court?

13           MR. TILL:  No, Your Honor.  Thank you.

14           MR. PACHECO:  No, ma'am.  Thank you.

15           THE COURT:  Thank you, Mr. Till; thank you,

16   Mr. Pacheco; thank you to our probation officer and our court

17   staff and marshal staff.  That will conclude this matter, and

18   we'll stand in recess.

19           (Recess at 9:40 a.m.)

20                    REPORTER'S CERTIFICATE

21       I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.

22       Dated at Denver, Colorado, this 18th day of October,

23   2012.

24                              s/Therese Lindblom

25                         _____

                            Therese Lindblom,CSR,RMR,CRR